UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **SHANIA BLUE, BOB MEGNATH, PEDRO PACHECO, TORI BUIE, and THERESA JACKSON,** individually, and on behalf of others similarly situated, | Case No. |
| | Hon.: |
| Plaintiffs, | Mag.: |
| vs. | |
| **BRIDGE LEGAL SUPPORT SERVICES LLC**, an Illinois Limited Liability Company; **BRIDGE LEGAL HOLDINGS LLC**, an Illinois Limited Liability Company, **BRIDGE LEGAL TECHNOLOGY LLC**, an Illinois Limited Liability Company, | |
| Defendants. | |

## COLLECTIVE ACTION
## <u>COMPLAINT AND JURY DEMAND</u>

Plaintiffs, SHANIA BLUE, BOB MEGNATH, PEDRO PACHECO, TORI BUIE, and THERESA JACKSON ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, hereby brings this Collective Action Complaint against Defendants BRIDGE LEGAL SUPPORT SERVICES LLC, BRIDGE LEGAL HOLDINGS LLC, and BRIDGE LEGAL TECHNOLOGY (collectively "Defendants"), and states as follows:

### INTRODUCTION

1. This is a collective action brought pursuant to 29 U.S.C. § 216(b) arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*

2. According to their website, Defendants "innovative platform offers legal professionals a user-friendly interface and streamlined approach to case assembly."[1]

---

[1] *See*, https://bridgelegal.com/ (last visited 5/15/23).

3. As part of their services, Defendants offer to assume the case intake responsibilities (client onboarding and retention) for law firms across the country.[2] Specifically, they claim to "streamline[] the client onboarding process, ensuring your firm captures essential information efficiently and accurately."

4. While Defendants boast the efficiency of their automated intake software and processes, the reality is that the software serves no purpose without "Intake Specialists" who can make and take calls to the perspective clients, collect their information, then input the information into Defendants' software.

5. Plaintiffs, and the putative collective members, were employed by Defendants as Intake Specialists who interview potential clients and input their information into the Bridge Legal software for Defendants' clients. As discussed herein, the economic reality was that the Intake Specialists were employees of Defendants, and the Defendants misclassified them as independent contractors.

6. Defendants' Intake Specialists were regularly scheduled and required to work in excess of forty hours in a single week.

7. However, because Defendants misclassified Plaintiffs and the putative collective members as independent contractors, Defendants failed to pay the Intake Specialists overtime premiums, as required by the FLSA and other state wage and hour laws.

8. Plaintiffs seek a declaration that their rights, and the rights of the putative collective, were violated. Plaintiffs further seek on behalf of themselves and the members of the putative collective an award of unpaid wages and liquidated damages, injunctive and declaratory relief, interest, attendant penalties, an award of attorneys' fees and costs.

---

[2] *See*, https://bridgelegal.com/services/intake (last visited 5/15/2023).

**JURISDICTION**

9. This Court has subject matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under 29 U.S.C. § 201, *et seq.*

10. This Court also has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

11. Additionally, this Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

12. Defendants' annual sales exceed $500,000 and Defendants have more than two employees, so the FLSA applies in this case on an enterprise basis.

13. Defendants' Intake Specialists, including Plaintiffs, engage in interstate commerce or in the production of goods for commerce and therefore they are also covered by the FLSA on an individual basis, by virtue of their regular and routine use of phone lines in the performance of their job duties.

14. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because they are so closely related to Plaintiffs' federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

15. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

16. This Court has personal jurisdiction over Defendants because they conduct business within the state of Illinois, have their principal place of business in Illinois, are registered with the Illinois Secretary of State and employ individuals within the state of Illinois.

17. This Court also has personal jurisdiction over Defendants because they have purposefully availed themselves of the privilege of conducting activities in the state of Illinois, has established minimum contacts sufficient to confer jurisdiction over them and have their principal place of business in this district and division; and the assumption of jurisdiction over Defendants will not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional requirements of due process.

## VENUE

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendants conduct substantial business activities within this District and maintain their principal place of business in this District.

## PARTIES

19. Plaintiff SHANIA BLUE ("Plaintiff Blue") is a Virginia citizen who worked for Defendants as a remote Intake Specialist from her home in Virginia within the past two years.

20. Plaintiff BOB MEGNATH ("Plaintiff Megnath") is a Florida citizen who worked for Defendants as a remote Intake Specialist from his home in Florida within the past two years

21. Plaintiff PEDRO PACHECO ("Plaintiff Pacheco") is a New York citizen who worked for Defendants as a remote Intake Specialist from his home in New York within the past two years.

22. Plaintiff TORI BUIE ("Plaintiff Buie") is currently a Connecticut citizen who worked for Defendants as a remote Intake Specialist from her home in South Carolina within the past two years.

23. Plaintiff THERESA JACKSON ("Plaintiff Jackson") is an Illinois citizen who worked for Defendants as a remote Intake Specialist from her home in Illinois within the past two

years

24. Each of the Plaintiffs has filed a consent to join this action. *See*, **Exhibits 1-5**, Plaintiffs' Consent to Join Forms.

25. Defendant Bridge Legal Support Services LLC, an active limited liability company (File #0818715 with the Illinois Secretary of State), has a principal office address of 1 South Dearborn, 20th Floor, Chicago, Illinois 60603.

26. Defendant Bridge Holdings LLC, an active limited liability company (File #08018731 with the Illinois Secretary of State), has a principal office address of 1 South Dearborn, 20th Floor, Chicago, Illinois 60603.

27. Defendant Bridge Legal Technology LLC, an active limited liability company (File #08018693 with the Illinois Secretary of State), has a principal office address of 1 South Dearborn, 20th Floor, Chicago, Illinois 60603.

## JOINT EMPLOYER ALLEGATIONS

28. Under the FLSA, "employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).

29. The definition of "employer" under the FLSA is not limited to the common law concept of "employer," and is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes. *Real v. Driscoll Strawberry Assocs.*, 603 F.2d 748, 754 (9th Cir. 1979).

30. Congress defined "employee" as "any individual employed by an employer," 29 U.S.C. § 203(e)(1), describing this language as "the broadest definition that has ever been included in any one act." *United States v. Rosenwasser*, 323 U.S. 360, 363 n.3 (1945) (*quoting* 81 Cong. Rec. 7657 (1937) (statement of Sen. Hugo Black)); *Tony & Susan Alamo Found. v. Sec'y of Labor*,

471 U.S. 290, 300 n.21 (1985) (same).

31. The determination of whether an employer-employee relationship exists does not depend on "isolated factors but rather upon the circumstances of the whole activity." *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947). The touchstone is "economic reality." *Goldberg v. Whitaker House Cooperative, Inc.*, 366 U.S. 28, 33 (1961).

32. Two or more employers may jointly employ someone for purposes of the FLSA. *Falk v. Brennan*, 414 U.S. 190, 195 (1973).

33. All joint employers are individually responsible for compliance with the FLSA. 29 C.F.R. § 791.2(a) (1981).

34. The ultimate question of whether a party is an "employer" is a legal issue. *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1469–70 (9th Cir. 1983). The ultimate determination must be based "upon the circumstances of the whole activity." *Id.* at 1470 (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722 (1947).

35. At all relevant times, all Defendants controlled the rate and method of payment for the employees (including Intake Specialists); controlled and dictated their schedule and job duties; provided them with the tools needed to perform their jobs; decided upon and implemented the unlawful policies discussed herein; enforced said policies; and otherwise, exercised control, input, and responsibility for the work hours, method and performance of job duties, compensation and pay policies at issue in this case. Thus, all Defendants meet the test for joint employer.

36. Whether employers, or joint employers, each Defendant is nevertheless liable for the wage violations pleaded in this Complaint. *Falk*, supra; 29 C.F.R. § 791.2(a).

## COMMON ENTERPRISE

37. The FLSA provides, in relevant part, that the term, "[e]nterprise means the related

activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all activities whether performed in one or more establishments ...." 29 U.S.C. § 203(r).

38. The three elements to be satisfied are: (1) related activities, (2) unified operation or common control, and (3) common business purpose. See *Brennan v. Arnheim & Neely*, 410 U.S. 512, 518, 93 S.Ct. 1138, 35 L.Ed.2d 463 (1973).

39. The Defendants meet all three elements.

40. Related activities are those which are "the same or similar," S.Rep. No. 145, 87th Cong. 1st Sess. 41, reprinted in 1960 U.S.Code Cong. & Ad. News 1620, or are "auxiliary or service activities." 29 C.F.R. § 779.206(a) (quoting id.). Auxiliary and service activities include generally "all activities which are necessary to the operation and maintenance of the particular business," such as warehousing, bookkeeping, or advertising. *Id*.; *see also id*. at § 779.208. When different business entities are involved, the critical inquiry is whether there is " 'operational interdependence in fact.' " *Donovan v. Easton Land & Dev., Inc.*, 723 F.2d 1549, 1551 (11th Cir.1984) (*quoting Brennan v. Veterans Cleaning Serv., Inc.*, 482 F.2d 1362, 1367 (5th Cir.1973)). Entities which provide mutually supportive services to the substantial advantage of each entity are operationally interdependent and may be treated as a single enterprise under the Act. *Dole v. Odd Fellows Home Endowment Bd.*, 912 F.2d 689, 692–93 (4th Cir.1990).

41. In the present case, Defendants are operationally interdependent because they share ownership, management, employees, technology, equipment, and employment policies.

42. The Secretary's regulations define "unified operation" as "combining, uniting, or organizing [related activit'es'] performance so that they are in effect a single business unit or an organized business system which is an economic unit directed to the accomplishment of a common

business purpose." 29 C.F.R. § 779.217. "Control" is the power to "direct, restrict, regulate, govern, or administer the performance" of the related activities, and "common control" exists "where the performance of the described activities are controlled by one person or by a number of persons, corporations, or other organizational units acting together." *Id*. § 770.221.

43. As explained herein, the Defendants maintain a unified operation with common ownership and control of each restaurant. Further, the Defendants maintain the power to direct, restrict, regulate, govern or administer the performance of all hourly Intake Specialists' work activities. Additionally, Defendants maintain the power to hire, discipline, and fire the employees (including Intake Specialists). Finally, as it pertains to this case, Defendants dictate the compensation policies and procedures of the Intake Specialists.

44. "'Common control' may exist … despite the separate management of the individual establishments." *Dole v. Bishop*, 740 F.Supp. 1221, 1225 (S.D.Miss.1990) (citing *Shultz v. Morris*, 315 F.Supp. 558, 564 (M.D.Ala.1970), *aff'd sub nom*., *Hodgson v. Morris*, 437 F.2d 896 (5th Cir.1971)).

45. In this action, although there may have been some separate management of the entities, much of the management was shared.

46. Finally, obviously enough, the Defendants all share in the common business purpose of advancing and growing the services they jointly provide to their law firm clients.

## **GENERAL ALLEGATIONS**

47. Defendants employed Plaintiffs as remote Intake Specialists from Plaintiffs' home offices throughout the country in the last two years.

48. Defendants employed the putative collective members as remote Intake Specialists from their home offices throughout the country within the past three years.

49. The job duties of Defendants' Intake Specialists include using Defendants' software to collect information from potential clients for the law firms that contract with Defendants. Indeed, Defendant's website boasts "efficient intake services [to] streamline your case intake processes with tailored services, helping you quickly identify and secure valuable clients for your single event cases."[3]

50. Additionally, Defendants offer a "full service solution" that promises customers will "[b]enefit from an all-inclusive package combining marketing, intake, retainer, and case workup services."

51. However, upon hire, Intake Specialists are required to sign a "Contractor Agreement" like the one attached hereto as *Exhibit 6*.

52. As stated in the agreement, Defendants pay the Intake Specialists on an hourly basis. Additionally, Defendants permit Intake Specialists to take a 15-minute paid break for each four hours worked.

53. After assigning an Intake Specialist to their weekly schedule, Defendants schedule Intake Specialists for a 45-minute unpaid lunch during their assigned shifts.

54. Intake Specialists are regularly scheduled to work forty or more hours per week by Defendants, as evidenced by the "Invoice" attached as **Exhibit 7**. Defendants do not pay Intake Specialists any overtime premiums. *Id*.

55. Defendants maintain strict performance and schedule adherence metrics for Intake Specialists.

56. Additionally, Defendants put the Intake Specialists through a comprehensive training process that includes: call recording and feedback, scripted intake questions, testing, role

---

[3] See, Services - Bridge Legal (last visited 5/16/23).

playing, shadowing other intake reps, logging into their computer systems and using the same, and training on disposition protocols and best practices, among other things.

57. Upon hire, Intake Specialists are assigned to a "Intake Team Lead" who monitors their day-to-day performance and a "Training Manager."

58. Even though job training is indisputably compensable time, Intake Specialists are provided with training materials to review and training videos to watch; however, they are not compensated for all the time spent on those compensable training activities which are performed for the benefit of Defendants.

59. Additionally, Intake Specialists are required to use and monitor correspondence with their supervisors on a program called "Slack." Intake Specialists are not paid for the time spent reading and responding to messages from their supervisors and team members outside of their scheduled shifts.

60. On most days, Intake Specialists spend at least ten to fifteen minutes each day reading or responding to messages in Slack for which Defendant fails to provide compensation.

## FLSA COLLECTIVE ALLEGATIONS

61. Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

> *All current and former Intake Specialists who have worked for Defendants at any time during the three years preceding the filing of this Complaint up through and including judgment*

(hereinafter referred to as the "FLSA Collective"). Plaintiffs reserve the right to amend this definition if necessary.

62. Defendants are liable under the FLSA for, *inter alia*, misclassifying Intake Specialists as independent contractors and failing to properly compensate Plaintiffs and other

10

similarly situated Intake Specialists.

63. Consistent with Defendants' policy and pattern or practice, Plaintiffs and the members of the FLSA Collective were not paid premium overtime compensation when they worked beyond forty (40) hours in a workweek.

64. Defendants assigned and/or were aware of all of the work that Plaintiffs and the members of the FLSA Collective performed.

65. As part of their regular business practices, Defendants intentionally, willfully and repeatedly engaged in a pattern, practice and/or policy of violating the FLSA with respect to Plaintiffs and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

   a. Misclassifying Plaintiffs and the FLSA Collective as independent contractors when the economic realities of the relationship clearly illustrate an employee and employer relationship existed;

   b. Willfully failing to pay their employees, including Plaintiffs and the members of the FLSA Collective, premium overtime wages for all hours worked in excess of forty (40) hours per workweek; and

   c. Willfully failing to record all of the time that their employees, including Plaintiffs and the members of the FLSA Collective, worked for the benefit of Defendants.

66. Defendants are aware or should have been aware that federal law requires them to pay Plaintiffs and the members of the FLSA Collective overtime premiums for hours worked in excess of forty (40) per workweek.

67. Defendants' unlawful conduct has been widespread, repeated and consistent.

68. A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b).

69. The employees on behalf of whom Plaintiffs bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b)

11

they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan (misclassification and off-the-clock work); and (d) their claims are based upon the same factual and legal theories.

70. The employment relationships between Defendants and every proposed FLSA Collective member are the same and differ only by name, location and rate of pay.

71. The key issues – the misclassification of Intake Specialists and the amount of off-the-clock work that occurred each day – do not vary substantially among the proposed FLSA Collective members.

72. Many similarly situated current and former Intake Specialists have been underpaid in violation of the FLSA and would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

73. Court-supervised notice of this lawsuit should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

74. Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records.

75. Plaintiffs estimate that the proposed FLSA Collective, including both current and former employees over the relevant period, will include hundreds, if not thousands, of workers.

76. The precise number of FLSA Collective members should be readily available from a review of Defendants' personnel and payroll records.

### COUNT I
### (29 U.S.C. § 216(b) Collective Action)
### VIOLATION OF FLSA, 29 U.S.C. § 201, *et seq*.
### FAILURE TO PAY OVERTIME WAGES

77. Plaintiffs re-allege and incorporate all previous paragraphs herein.

78. At all times relevant to this action, Defendants were engaged in interstate

commerce, or in the production of goods for commerce, as defined by the FLSA.

79. At all times relevant to this action, Plaintiffs and the FLSA Collective were "employees" of Defendants within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

80. Plaintiffs and the FLSA Collective, by virtue of their job duties and activities actually performed, are all non-exempt employees.

81. Plaintiffs and the FLSA Collective either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

82. At all times relevant to this action, Defendants "suffered or permitted" Plaintiffs and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

83. At all times relevant to this action, Defendants required Plaintiffs and the FLSA Collective to perform no less than ten (10) to fifteen (15) minutes of off-the-clock work per shift, but failed to pay these employees the federally mandated overtime compensation for the off-the-clock work.

84. In workweeks where Plaintiffs and other FLSA Collective members worked forty (40) hours or more, the uncompensated off-the-clock work time, and all other overtime, should have been paid at the federally mandated rate of 1.5 times each employee's regularly hourly wage, including shift differentials and nondiscretionary incentive pay where applicable. 29 U.S.C. § 207.

85. Defendants' violations of the FLSA were knowing and willful.

86. Defendants knew or could have determined how long it takes its Intake Specialists to perform their off-the-clock work.

87. Further, Defendants could have easily accounted for and properly compensated

Plaintiffs and the FLSA Collective for these work activities, but did not.

88. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf, and on behalf of the putative FLSA Collective, requests judgment as follows:

a. Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b. Ordering Defendants to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all collective action Collective members, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Collective members of their rights by law to join and participate in this lawsuit;

c. Designating Plaintiffs as the representative of the FLSA collective action, and undersigned counsel as Collective counsel for the same;

d. Declaring Defendants violated the FLSA and the DOL's attendant regulations as cited herein;

e. Declaring Defendants' violation of the FLSA was willful;

f. Granting judgment in favor of Plaintiffs and against Defendants and awarding Plaintiffs and the Collective members the full amount of damages and liquidated damages available by law;

g. Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by statute;

h. Awarding other pre- and post-judgment interest to Plaintiffs on these damages; and

i. Awarding such other and further relief as this Court deems appropriate.

## RELIANCE ON JURY DEMAND

Plaintiffs, individually and on behalf of all others similarly situated, by and through their

attorneys, hereby relies on the previous demand for a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: June 2, 2023        Respectfully Submitted,

**ASH LAW, PLLC**

*s/ Andrew R. Frisch*
**MORGAN & MORGAN, P.A.**
Andrew R. Frisch (FBN 027777) (*Admitted*)
55 E Monroe Street, Suite 3800
Chicago, IL 60603
Phone: (954) WORKERS
Fax: (954) 327-3013
AFrisch@forthepeople.com

**ASH LAW, PLLC**
Charles R. Ash, IV (P73877) (*Admitted*)
402 W. Liberty St.
Ann Arbor, MI 48103-4388
Phone: (734) 234-5583
Email: cash@nationalwagelaw.com