| | |
|---|---|
| **SHANIA BLUE, BOB MEGNATH, PEDRO PACHECO, TORI BUIE, and THERESA JACKSON,** individually, and on behalf of others similarly situated, | Case No. 23-cv-03487 |
| | Hon.: Edmond E. Chang |
| Plaintiffs, | |
| **vs.** | |
| **BRIDGE LEGAL SUPPORT SERVICES LLC,** an Illinois Limited Liability Company; **BRIDGE LEGAL HOLDINGS LLC,** an Illinois Limited Liability Company, **BRIDGE LEGAL TECHNOLOGY LLC**, an Illinois Limited Liability Company, | |
| Defendants. | |

## SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This Settlement Agreement and Release of Claims (the "Agreement") is entered into by and between SHANIA BLUE, BOB MEGNATH, PEDRO PACHECO, TORI BUIE, and TERESA JACKSON (the "Named Plaintiffs"), individually and on behalf of the putative collective of individuals that they seek to represent, and BRIDGE LEGAL SUPPORT SERVICES LLC, BRIDGE LEGAL HOLDINGS LLC, and BRIDGE LEGAL TECHNOLOGY LLC, (hereinafter collectively referred to as "Defendants") (and together with Named Plaintiffs, the "Parties").

## RECITALS

WHEREAS, the Named Plaintiffs, individually and on behalf of others similarly situated, filed suit against Defendants in the United States District Court for the Northern District of Chicago, Eastern Division, Case No.1-23-cv-03847, alleging that Defendant owes them overtime compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*.; and asserting their claims on behalf of a putative FLSA collective; and

WHEREAS, shortly after the filing of the above referenced lawsuit, Defendants produced arbitration agreements for all of the Named Plaintiffs and each individual that opted into the case by filing a consent to join form (the Opt-in Plaintiffs); and

WHEREAS, Defendants deny all of the allegations made by the Named Plaintiffs in the Lawsuit, denies that it failed to pay, or that it otherwise owes the Named Plaintiffs or any members

of the putative class or collective, any overtime compensation, and further denies that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted (or that could have been asserted) in the Lawsuit. Nonetheless, without admitting or conceding any liability, wrongdoing, or damages whatsoever, Defendants have agreed to settle the Lawsuit on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Lawsuit; and

WHEREAS, Plaintiffs' Counsel thoroughly analyzed and evaluated the merits of the claims made against Defendants in the Lawsuit, obtained and reviewed hundreds of pages of documents relating to Defendants' compensation policies, job descriptions, and analyzed timekeeping and payroll data, and based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of litigation, including the strong possibility that the Lawsuit would be stayed and compelled to individual private arbitration, and further, if not settled now, might not result in any recovery or might result in a recovery less favorable, and that any recovery may not occur for several years, Plaintiffs' Counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Named Plaintiff and Settlement Collective Members (as hereinafter defined).

WHEREAS, the purpose of this Agreement is to settle fully and finally all Released Wage and Hour Claims (as hereinafter defined) between the Participating Plaintiffs (as hereinafter defined) and Defendants and all claims between the Named Plaintiffs and Defendants, including but not limited to all claims asserted in the Lawsuit; and

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Lawsuit on the following terms and conditions:

## 1. DEFINITIONS

The defined terms set forth in this Agreement have the meanings ascribed to them below.

1.1 "**Agreement**" means this Settlement Agreement and Release of Claims.

1.2 "**Approval Order**" means the Order to be entered by the Court approving the terms and conditions of this Agreement and directing the manner and timing of providing Notices to the Settlement Collective Members.

1.3 "**Intake Specialists**" means all sixty four (64) current and former hourly intake specialists providing services to Defendants as independent contractors between June 2, 2021 to September 21, 2023.

1.4 "**Claim Form**" means the form on pages 8-9 of the Notice in **Exhibit A**, which each Collective Member must complete in full and return, as set forth herein, in order to become a Participating Plaintiff and to recover a portion of the Collective Settlement Amount.

1.5 "**Collective Counsel**" or "Plaintiffs' Counsel" means Ash Law, PLLC and Morgan

and Morgan, P.A.

1.6 "**Collective Settlement Amount**" means $18,000.00, the amount of the Total Settlement Amount that will be available to the Settlement Collective Members. Any Settlement Collective Member who wishes to receive their share of the Collective Settlement Amount must submit a Claim Form.

1.7 "**Settlement Collective Members**" means the sixty four (64) Intake Specialists providing services to Defendants as independent contractors between June 2, 2021 to September 21, 2023 that Plaintiffs allege were misclassified (the "**Relevant Period**"). This is the group to whom Notice will be sent.

1.8 "**Court**" means the United States District Court for the Northern District of Illinois.

1.9 "**Defendants**" means Bridge Legal Support Services, LLC, Bridge Legal Holdings LLC, and Bridge Legal Technology LLC.

1.10 "**Defendants' Counsel**" means Gordon Rees Scully Mansukhani, LLP.

1.11 "**Effective Date**" shall be the later of (a) the date the Court approves this Settlement Agreement and Release of Claims, or (b) the date the Court enters judgment dismissing the Lawsuit.

1.12 "**Employer Payroll Taxes**" means any and all taxes and withholdings that Defendant is required to make arising out of or based upon the payment of wages in the Lawsuit, including without limitation FICA, FUTA, SUTA and other federal or state tax obligations.

1.13 "**Lawsuit**" means the case of *Shania Blue, et al. v. Bridge Legal Support Service LLC,* et al., in the United States District Court for the Northern District of Illinois, Eastern Division, Case No. 23-cv-03487.

1.14 "**Named Plaintiffs**" means Shania Blue, Bob Megnath, Pedro Pacheco, Tori Blue, and Teresa Jackson.

1.15 "**Notice**" means the Court-approved Notice of Settlement of Collective Action Lawsuit, attached hereto as **Exhibit A**.

1.16 "**Participating Plaintiffs**" shall mean those Settlement Collective Members who timely return a completed Claim Form, and the Named Plaintiffs and existing opt-in Plaintiffs, who shall all be deemed to have submitted a valid claim, without the necessity of submitting a Claim Form.

1.17 "**Parties**" shall mean, collectively, Named Plaintiffs and Defendants.

1.18 "**Released Parties**" means Defendants (as defined above) and its related entities

including, but not limited to, all of its current and former parents, divisions, affiliates, subsidiaries, predecessors, successors, assigns, current and future owners, employee benefit plans and plan administrators, and insurers, and their respective directors, partners, shareholders, principals, officers, members, fiduciaries, trustees, employees, attorneys, and their agents, guardians, successors, assigns, heirs, executors, and administrators.

1.19    The "**Settlement Claims Administrator**," also referred to as "**Claims Administrator**" will be Plaintiffs' Counsel.

1.20    **Total Settlement Amount**" means the total amount of Fifty Thousand Dollars and Zero Cents ($50,000.00), up to which Defendants have agreed to pay to fully resolve and settle the Lawsuit, including any and all claims for the separately negotiated attorneys' fees and costs, any and all amounts to be paid to or on behalf of Settlement Collective Members and the Named Plaintiffs, all Collective Representative Service Awards, all administrator's fees and costs, and all taxes. Under no circumstances will Defendants be required to pay more than the combined gross total of Fifty Thousand Dollars and Zero Cents ($50,000.00).

## 2.    APPROVAL AND NOTICE

**2.1    Binding Agreement**: This Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement of the Lawsuit.

**2.2    Settlement Claims Administration**: Collective Counsel will be responsible for the mailing and e-mailing of Notices and Claim Forms to Settlement Collective Members in accordance with the Court's Approval Order; responding to Collective Member inquiries; calculating the Settlement Checks in accordance with the Court's Approval Order; resolving disputes relating to Settlement Collective Members' settlement amounts; and filing Claim Forms (after redacting personal contact information) with the Court.

At the conclusion of the opt-in period, Defendants shall be responsible for issuing Settlement Checks and 1099's in accordance with the payments approved by the Court.

In the event of a dispute regarding a Collective Member's Settlement Award, the Counsel for the Parties shall promptly confer in good faith in an effort to resolve the dispute. In the event counsel and the Collective Member are unable to reach agreement, the Collective Member will not be joined to the case as a Participating Plaintiff and shall not waive any claims.

**2.3    Certification of a Settlement Collective.**  The parties are agreeing to certification of a collective for settlement purposes only.  This Agreement shall not constitute, in this or any other proceeding, an admission of any kind by Defendants, including without limitation, that certification of a class or collective action for trial or any other purpose is appropriate or proper or that Named Plaintiffs can establish any of the requisite elements for class, collective or representative treatment of any of the claims in the Lawsuit were Defendants to contest certification.

**2.4    Settlement Approval Motion**

(A)    On or before October 23, 2023, Plaintiffs' Counsel will draft a Motion for Approval of Settlement ("Approval Motion") consistent with this Agreement, which Defendant agrees not to oppose. Plaintiffs' Counsel shall provide Defendant's Counsel a reasonable opportunity to review the Approval Motion before filing and shall not unreasonably refuse to consider edits proposed by Defendant's Counsel. In connection with the unopposed Approval Motion, the Parties will submit to the Court a Notice of Settlement of Collective Action Lawsuit; a proposed distribution method for the individual settlement amounts for each Participating Plaintiff; and a proposed Approval Order.

(B)    In the Approval Motion, Named Plaintiffs will request that the Court: (1) certify a collective for settlement purposes only; (2) approve this Agreement as fair, adequate and reasonable in all respects; (3) dismiss the Lawsuit with prejudice; and (4) retain jurisdiction to enforce the agreement and order the clerk to keep the case open until 15 days after the final payments are due pursuant to the terms of this Agreement.

(C)    If the Court denies the Approval Motion, the Parties agree to jointly seek reconsideration of the ruling or attempt to renegotiate the settlement based on the Court's orders and seek Court approval of a renegotiated settlement. Only in the event that all reasonable effort has been exercised in an attempt to secure court approval of this Settlement or one reasonably close in terms will this Lawsuit resume as if no settlement had been attempted. Subject to the foregoing, if the settlement is not approved, this agreement will be void and the parties will be restored to their prior positions as if they had not entered into this Agreement. The parties further agree that this Agreement will not be admissible in this or any other proceeding as evidence that either (i) a class action should be certified, or that this matter may proceed as a representative action; or (ii) Defendant is liable to Named Plaintiffs or any Collective Member (or any other person), other than according to the terms of this Agreement.  In the event that the settlement is not approved or otherwise voided, Defendant retains the right to contest whether the Lawsuit should be maintained as a collective or class action and to contest the merits of the claims being asserted in the Lawsuit. This Agreement (including Exhibits) will not be used for any purpose in connection with the Lawsuit, any future litigation, or any other lawsuit, arbitration, administrative or other legal proceeding, claim, investigation, or complaint, except that the non-disclosure obligations herein will remain in effect.

**2.5    Notice to Settlement Collective Members**

(A)    Within fourteen (14) days of the Effective Date, Defendant will provide the Collective Counsel, in electronic form, the following information for all Settlement Collective Members: name and most current address from business records (the "Collective List"). Defendant agrees to re-run a list of current addresses from

business records, but has no obligation to do additional searching for location of the Settlement Collective Members. Collective Counsel shall maintain the unredacted Collective List as confidential and shall not share the data with any person or entity, except as Defendant may agree or as may be ordered by the Court.

(B)     Within fourteen (14) days of the receipt of the Collective List from Defendant, Collective Counsel will mail to all Settlement Collective Members, via First-Class United States Mail, postage prepaid, the Court-approved Notice of Settlement of Collective Action Lawsuit, Claim Form and an addressed postage-paid return envelope. The Notice shall state that the Notice is authorized and approved by the Court, inform the Class Members of their eligibility to participate in the settlement by signing and returning the enclosed consent form, clearly state the deadline by which the Settlement Collective Member must return the Claim Form to participate in the settlement, inform the Settlement Collective Member of the acceptable methods of transmitting the Claim Form, inform them of the general nature of the claims asserted in the Lawsuit, their rights as Settlement Collective Members (including without limitation the right to be free from retaliation), specify the scope of the claims they release by virtue of participating in the settlement (including a release of all FLSA and state law wage claims), state the legal effect of not participating in the settlement, advise them of their representation by Collective Counsel at no cost if they choose, and provide them instruction on how to contact Collective Counsel if they have questions. The Claim Form shall be a form pursuant to which the Settlement Collective Member agrees to participate in this settlement, accept representation by Collective Counsel and releases the Released Claims as specified herein. The Claim Form shall also require the Settlement Collective Member to provide his or her name, date of signing, current address, email address and phone number and their social security number and which can be returned by methods set forth by the Collective Counsel (which shall include U.S. Mail, facsimile or email). The Claim Form shall advise the Settlement Collective Member that the contact information is for use by Collective Counsel and Defendants' Counsel only and will not be filed with the Court. Any Claim Form filed shall have such contact information redacted. Settlement Collective Members will only be bound by this settlement and will only be entitled to receive a share of the Collective Settlement Amount if they return their fully completed and signed Claim Form postmarked (for Claim Forms returned by mail) or time/date stamped (for Claim Forms returned by facsimile or email) within forty-five (45) days from the mailing of the Notice to them ("Consent Deadline").

## 2.5     Claim Forms and Settlement Checks

(A)     Named Plaintiffs, existing Opt-in Plaintiffs, and Settlement Collective Members who timely return a completed Claim Form shall be Participating Plaintiffs and will be issued a Settlement Check by the Defendant in accordance with the Approval Order.

(B)     The Settlement Checks will be mailed to Participating Plaintiffs by the

Defendant within thirty (30) days of the date that the opt-in period closes.

(C) The following release language shall be included by the Defendant on the back of each Settlement Check (or other similar method):

*My signature or negotiation of this check constitutes a full, final and complete release by me of Bridge Legal Support Services LLC, Bridge Legal Holdings LLC, Bridge Legal Technology LLC and its parent subsidiary and affiliated entities, and their respective officers, directors and employees, for any and all unpaid wages, overtime and minimum wage type claims, and any associated penalties, interest, liquidated damages or attorneys' fees and costs, as well as any other claims for compensation pursuant to contract or agreement or otherwise, including those that were or could have been asserted or alleged on my behalf in the matter Shania Blue, et al. v. Bridge Legal Support Services LLC, in the United States District Court for the Northern District of Illinois, Case No. 23-cv-03847 up to and including, the Effective Date, as well as my acknowledgement that I accept this check as payment in full for all claims asserted or alleged on my behalf in that Lawsuit.*

## 3. SETTLEMENT TERMS AND ADMINISTRATION

### 3.1 Settlement Amount

(A) Defendant agrees to pay up to the Total Settlement Amount of Fifty Thousand Dollars and Zero Cents ($50,000.00), which shall be the maximum amount necessary pursuant to the terms of this Agreement to fully resolve and satisfy any claim for attorneys' fees and costs, any and all amounts to be paid to or on behalf of the Named Plaintiffs, payments to Participating Plaintiffs, payment for settlement administration fees and costs, and any and all taxes. Under no circumstances will Defendant be required to pay more than the gross total of Fifty Thousand Dollars and Zero Cents ($50,000.00). The Total Settlement Amount will be divided into three separately negotiated categories. **Category 1**, in the total amount of $26,000.00, is the amount that, upon approval of the settlement by the Court, will be paid to counsel for Plaintiffs and represents payment of all attorneys' fees and litigation costs, **Category 2**, in the total amount of $6,000.00, which will also be paid upon approval of the settlement by the Court to Named Plaintiffs as Collective Representative Service Awards, and **Category 3**, in the amount of $18,000.00 consists of the **Collective Settlement Amount** from which the potential Settlement Collective Members will be eligible to be paid based on their reported overtime hours and workweeks of service pursuant to this Agreement, provided that they timely return an executed Claim Form. Each of the above Categories was negotiated separate and apart from one another. Notwithstanding the foregoing, this settlement is contingent upon approval and certification by the Court, and in the event that the settlement is not approved, or in the event that the judgment otherwise does not become final, no payments shall be due or made by or on behalf of

Defendant to anyone pursuant to this Agreement.

(B)     The formula and methodology utilized to calculate the individual Settlement Collective Members' potential settlement awards is set forth herein, and is based on a base hourly rate of $20.00 per hour. Defendant has agreed to fund up to $18,000.00 to fund the unpaid wage claim for the sixty-four members of the Settlement Collective.

First, any Settlement Class Member who reported overtime hours on their invoices to Defendant (more than 80 hours in a two-week period) will be paid the full amount of unpaid overtime hours, plus liquidated damages. Based on Collective Counsel's review of the Settlement Class Members' invoices, that totals $11,804.00.

Next, for all Settlement Class Members, it was presumed that they worked forty hours in 25% of workweeks and worked six (6) minutes off-the-clock loading and logging into their computer system. Based on an overtime rate of $30.00 per hour, the number of weeks of service for each Settlement Class Member, and twenty-five (25) minutes of off-the-clock work for each week in an overtime week, each Settlement Class Member will be eligible to receive the full amount of unpaid wages, plus liquidated damages. This claim for damages totaled to $5,925.00.

Using the methodology set forth above, the spreadsheet attached hereto identifies the maximum payment under this Settlement to each member of the Settlement Collective, should they timely return a Claim Form.

(C)     Provided a Settlement Collective Member timely returns an executed claim form so as to become a Participating Plaintiff, such individual's Individual Settlement Amount will be paid on an IRS Form 1099 basis.

(D)     Within thirty (30) days after the Effective Date, Defendant will issue checks for the attorney's fees and litigation costs, as well as the Collective Representative Awards.

(E)     Within thirty (30) days after being notified in writing of the total gross amount owed for payment of Individual Settlement Amounts to Participating Plaintiffs, Defendant will deliver to the Collective Counsel the total amount due to all Participating Plaintiffs for their Individual Settlement Payments. Fourteen (14) days thereafter, the Collective Counsel shall issue all Individual Settlement Payments.

(D)     Participating Plaintiffs will have 90 days from the date of mailing to cash their Settlement Checks (the "Acceptance Period"). Settlement Collective Members will be informed of the Acceptance Period in the Notices and on the Settlement Checks.

(E)     Any unclaimed funds and the value of un-negotiated settlement checks to Participating Plaintiffs that remain uncashed 90 days after the date of mailing shall belong to Defendant. A Participating Plaintiff's failure to cash their settlement

check shall not affect the validity of their release of claims pursuant to this Agreement. The Collective Counsel shall void uncashed checks and distribute any such amounts to Defendant within twenty (20) days after the last date on which a Participating Plaintiff may cash their settlement checks.

**3.2    Settlement Amounts Payable as Attorneys' Fees, Litigation Costs, and Collective Representative Service Awards**

(A)    The Parties have separately negotiated and agreed upon a reasonable fee to Collective Counsel (based on their lodestar and a negative lodestar multiplier), which includes all litigation costs, in the amount of $26,000.00.

(B)    Notwithstanding Section 2.4(C), the outcome of any proceeding related to Collective Counsel's attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the approval of the underlying settlement, which was negotiated separately from the attorney fees and litigation costs.

(C)    In exchange for the General Release as defined below, Defendant agrees not to oppose or object to any application or motion by Plaintiffs for Collective Representative Service Awards in the amount of $6,000.00 (total) for the Named Plaintiffs' time, effort, and risk in bringing and prosecuting this matter. The Collective Representative Service Awards shall be paid simultaneously with the Attorney Fees and Litigation Costs. Any portion of the requested Collective Representative Service Award that is not awarded to the Named Plaintiffs shall be part of the Collective Settlement Amount and shall be distributed to Settlement Collective Members on a pro-rata basis. Defendants shall issue an IRS Form 1099-MISC to Named Plaintiffs for their Collective Representative Service Awards. Named Plaintiffs shall be solely and legally responsible to pay any and all applicable taxes on their Collective Representative Service Awards. The Collective Representative Service Award shall be in addition to the Named Plaintiffs' Individual Settlement Amount as a Participating Plaintiff. In the event that the Court reduces or does not approve the requested Collective Representative Service Award, Plaintiff shall not have the right to revoke or renegotiate the Settlement, or file an appeal, and it will remain binding.

**3.3    Collective Settlement Amount and Allocation to Collective Members**.  The allocation to Collective Members for Settlement Checks will be made from the Collective Settlement Amount.

**3.4    Tax Characterization**

(A)    For tax purposes, the Collective Members' payments shall be treated as 1099 Income.

(B)    Individual Settlement Amounts shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and Social Security Number on an IRS Form 1099. Payments of attorneys'

fees and costs pursuant to the terms of this Agreement shall be made without withholding and reported to the IRS and the payee under the payee's name and taxpayer identification number, which each such payee shall provide for this purpose, on an IRS Form 1099.

(C)     Named Plaintiffs, Participating Plaintiffs and Plaintiffs' Counsel acknowledge and agree that each will be solely responsible for all taxes, interest and penalties due with respect to any payment received pursuant to this Agreement. Named Plaintiffs, Participating Plaintiffs and Plaintiffs' Counsel will not seek any indemnification from Defendant or any of the Released Parties with respect thereto. It is understood and agreed that Defendant makes no representations with respect to the tax consequences of any payment associated with the Settlement.

## 4.     RELEASE

### 4.1     Release of Claims and Covenant Not to Sue

By operation of the entry of the Approval of this Agreement, and except as to such rights or claims as may be created by this Agreement,

(A)     By signing and timely returning a completed Claim Form, a Participating Plaintiff shall fully, finally and forever release, remise and discharge the Released Parties from (1) any and all claims, demands, rights, liabilities and causes of action of every nature and description whatsoever, known or unknown, whether or not concealed or hidden, asserted or that might have been asserted, under the FLSA, any state wage and hour law or any state wage payment law, including but not limited to all claims for unpaid regular, straight time or overtime wages, or claims for miscalculation of the regular rate, as well as all associated claims for liquidated damages, punitive damages, penalties, interest, attorneys' fees and costs, taxes, equitable or injunctive relief, or any other remedies, (2) all claims for breach of contract or unjust enrichment or any other claim related to the payment of compensation, or (3) any other claims which could have been asserted in the Lawsuit for unpaid wages (together, the "Released Wage and Hour Claims"). The Released Wage and Hour Claims also includes all claims for derivative benefits (both ERISA and non-ERISA benefits, including 401(k) benefits or matching benefits, retirement benefits, and deferred compensation benefits) and all available remedies and relief of any kind or nature whatsoever related to such claims, relating to the Participating Plaintiff's employment as an Intake Specialist with Defendant during the Relevant Period. Each Participating Plaintiff agrees not to sue or otherwise cause to be instituted any legal or administrative proceedings, to the fullest extent permitted by law, asserting any Released Claim.

(B)     In addition to the Released Claims, the Named Plaintiffs only will execute General Release of all claims existing as of the date this Agreement is signed. Without limiting the generality of the foregoing, by their signatures below, each of the Named Plaintiffs releases and discharges the Released Parties from all liability, to

the fullest extent permitted by law, for any and all claims, actions, causes of action, promises, agreements, debts, liabilities, damages (including liquidated, consequential, or punitive damages), penalties, interest, assessments, or costs or expenses of any kind (including, but not limited to, attorneys' fees and litigation costs), whether known or unknown, suspected or unsuspected, fixed or contingent, under any theory of pleading or proof, arising out of any act or omission occurring before their respective execution of this Agreement (except any claims under federal and state law that may not be released as a matter of law), including, but not limited to: (a) any claims based on, arising out of, or related to their respective employment, services relationship, or independent contractor relationship with, the termination of their respective employment, services relationship, or independent contractor relationship with the Defendants, and/or any other actions, decisions, omissions, or events occurring through the date each Named Plaintiff executes this Agreement; (b) any claims for compensation of any kind, including without limitation, any and all salary or wages and/or amounts due under any contract, expenses, earned but unused vacation, commissions, or incentive or bonus compensation; (c) any claims arising from rights under any federal, state, and/or local constitution, statute, regulation, rule, ordinance, or law, including, but not limited to, those related to any form of retaliation, harassment, discrimination, hostile work environment, or whistleblower-protection laws on any basis, or any related cause of action; (d) any claim grounded in contract, tort, or equitable theories to the fullest extent permitted by law, including but not limited to personal injury claims, emotional distress claims, invasion of privacy claims, defamation claims, fraud claims, *quantum meruit* claims ; and/or (e) any other claims of any kind whatsoever, under any other theory, whether legal or equitable, including, but not limited to, any claims for any kind of damages, declaratory or injunctive relief of any kind, or legal fees. Each Named Plaintiff agrees not to sue or otherwise cause to be instituted any legal or administrative proceedings, to the fullest extent permitted by law, asserting any claim released under this paragraph.

(C)     Except as provided in this Agreement, Collective Counsel and the Named Plaintiffs, on behalf of the Collective Members individually and collectively, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that he, she or they may have against the Released Parties for attorneys' fees or costs associated with Collective Counsel's representation of the Collective Members. Collective Counsel further understands and agrees that Collective Counsel's fees and costs, will be the full, final and complete payment of all attorneys' fees and costs associated with Collective Counsel's representation in the Lawsuit. The release, acquittal and discharge set forth in this paragraph shall not apply to any attorneys' fees or costs incurred in relation to any efforts to enforce the terms of this Agreement or in subsequent litigation.

**4.2     Non-Admission of Liability:** Defendants deny that it violated the law in any manner asserted in, alleged in or related to the Lawsuit, or otherwise. Defendants maintain that at all times they have properly compensated and classified Named Plaintiffs and all Settlement Collective Members.  Defendants further deny that this case is suitable for

treatment as a class or collective action (except for the limited purposes of settlement), maintains all Collective Members are subject to binding arbitration agreements, and otherwise denies any and all wrongdoing alleged by Named Plaintiffs or otherwise. Neither this Agreement, nor any of its terms or provisions, nor any of the negotiations connected with it, shall be construed as an admission or concession by Defendants of any such violations or failures to comply with any applicable law. Except as necessary in a proceeding to enforce the terms of this Agreement, this Agreement and its terms and provisions shall not be offered or received as evidence in any action or proceeding to establish any liability or admission on the part of Defendants or to establish the existence of any condition constituting a violation of, or a non-compliance with, federal, state, local or other applicable law. Defendants have agreed to the terms of settlement herein without in any way acknowledging any fault or liability, and with the understanding that terms have been reached because this settlement will: (i) provide substantial benefits to Defendants' members, (ii) avoid the further expense and disruption of Defendants' business due to the pendency and expense of litigation, and (iii) put the claims in the Lawsuit finally to rest. Nothing in this agreement shall be deemed, construed or used as an admission of liability, culpability, negligence, wrongdoing or unlawful conduct of any kind or nature whatsoever by or on behalf of Defendants or the Released Parties, or as an admission that a class should be certified for any purpose other than settlement purposes.

## 5. INTERPRETATION AND ENFORCEMENT

**5.1 Cooperation Between the Parties; Further Acts:** The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to effectuate this Agreement, including during any appeals, and to obtain the Court's approval of this Agreement and all of its terms and to defend this Agreement and the settlement from any legal challenge. Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement. The Parties will fully cooperate with each other and with the Settlement Claims Administrator to accomplish, implement, and effectuate the terms of this Agreement, including but not limited to, the preparation and execution of documents necessary to implement this Agreement.

**5.2 No Assignment:** Collective Counsel and Named Plaintiffs represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Lawsuit, or any related action.

**5.3 Entire Agreement:** This Agreement constitutes the entire, complete and integrated agreement between the Parties with regard to the subject matter contained herein, including all settlement terms, and supersedes all previous oral or written agreements, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement. This Agreement may not be amended or modified except by a writing duly signed by the Parties or their duly authorized representatives.

**5.4 Binding Effect:** This Agreement shall be binding upon the Parties and, with respect to the

Named Plaintiff and all Participating Plaintiffs, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, trustees, attorneys, successors and assigns.

**5.5**  **Arms' Length Transaction; Materiality of Terms:** The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.  Accordingly, this Agreement shall not be construed more strictly against one party than another merely by virtue of the fact that it may have been prepared by counsel for one of the Parties, it being recognized that, because of the arms-length negotiations between the Parties, all Parties have contributed to the preparation of this Agreement.

**5.6**  **No Liens:**  Plaintiffs and Plaintiffs' Counsel warrant and represent that there are no liens on this Agreement or the settlement contemplated herein.

**5.7**  **Captions:** The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience or reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**5.7**  **Construction:** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**5.8**  **Blue Penciling/Severability:** If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable with the exception of the provisions of the Release contained herein, such finding shall not affect the validity of the remaining portions of this Agreement which will remain in full force and effect and will be construed and enforced to effect the purposes thereof to the fullest extent permitted by law.

**5.9**  **Governing Law:** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of Illinois, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

**5.10**  **Continuing Jurisdiction of the Court:** The parties will request that the Court retain jurisdiction over the interpretation, implementation, and enforcement of the terms of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby, including any and all orders and judgments entered in connection therewith.

**5.11**  **Waivers To Be in Writing**: No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this

Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

5.12 **When Agreement Becomes Enforceable; Counterparts:** This Agreement shall become binding upon its execution, subject to the provisions hereof. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

5.13 **Signature of Named Plaintiffs:** This Agreement is valid and binding once signed by Defendant's authorized representative and the Named Plaintiffs. Named Plaintiffs agree to sign this Agreement and by signing this Agreement are bound by the terms herein stated.

5.14 **Facsimile, Electronic and Email Signatures:** Any party may execute this Agreement by transmitting that signature page via facsimile, electronic signature or email to counsel for the other party. Any signature made and transmitted by facsimile, electronic signature or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile, electronic signature or email

5.15 **Parties' Authority:** The signatories hereto hereby represent that they are fully authorized to enter into this Agreement and bind the Parties hereto and the Participating Plaintiffs to the terms and conditions thereof.

**WE AGREE TO THESE TERMS:**

**PLAINTIFF**

Dated: _____                    _____
                                           LESHANIA BLUE

**PLAINTIFF**

Dated: _____                    _____
                                           PEDRO PACHECO

**PLAINTIFF**

Dated: _____

_____
TORI BUIE

**PLAINTIFF**

Dated: 11/10/2023

_____
BOBBY MEGNATH

**PLAINTIFF**

Dated: _____

_____
THERESA JACKSON

**DEFENDANTS**

Dated: _____

_____
]Edmund Scanlan, on behalf of
BRIDGE LEGAL SUPPORT SERVICES
LLC, BRIDGE LEGAL HOLDINGS, LLC,
and BRIDGE LEGAL TECHNOLOGY
LLC

Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

5.12 **When Agreement Becomes Enforceable; Counterparts:** This Agreement shall become binding upon its execution, subject to the provisions hereof. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

5.13 **Signature of Named Plaintiffs:** This Agreement is valid and binding once signed by Defendant's authorized representative and the Named Plaintiffs. Named Plaintiffs agree to sign this Agreement and by signing this Agreement are bound by the terms herein stated.

5.14 **Facsimile, Electronic and Email Signatures:** Any party may execute this Agreement by transmitting that signature page via facsimile, electronic signature or email to counsel for the other party. Any signature made and transmitted by facsimile, electronic signature or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile, electronic signature or email

5.15 **Parties' Authority:** The signatories hereto hereby represent that they are fully authorized to enter into this Agreement and bind the Parties hereto and the Participating Plaintiffs to the terms and conditions thereof.

**WE AGREE TO THESE TERMS:**

**PLAINTIFF**

Dated: _____

_____
LESHANIA BLUE

**PLAINTIFF**

Dated: 11/10/2023

_____
PEDRO PACHECO

**PLAINTIFF**

Dated: _____

_____
TORI BUIE

**PLAINTIFF**

Dated: _____

_____
BOBBY MEGNATH

**PLAINTIFF**

Dated: _____

_____
THERESA JACKSON

**DEFENDANTS**

Dated: _____

_____
]Edmund Scanlan, on behalf of
BRIDGE LEGAL SUPPORT SERVICES
LLC, BRIDGE LEGAL HOLDINGS, LLC,
and BRIDGE LEGAL TECHNOLOGY
LLC

Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

5.12   **When Agreement Becomes Enforceable; Counterparts:** This Agreement shall become binding upon its execution, subject to the provisions hereof. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

5.13   **Signature of Named Plaintiffs:** This Agreement is valid and binding once signed by Defendant's authorized representative and the Named Plaintiffs. Named Plaintiffs agree to sign this Agreement and by signing this Agreement are bound by the terms herein stated.

5.14   **Facsimile, Electronic and Email Signatures:** Any party may execute this Agreement by transmitting that signature page via facsimile, electronic signature or email to counsel for the other party. Any signature made and transmitted by facsimile, electronic signature or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile, electronic signature or email

5.15   **Parties' Authority:** The signatories hereto hereby represent that they are fully authorized to enter into this Agreement and bind the Parties hereto and the Participating Plaintiffs to the terms and conditions thereof.

**WE AGREE TO THESE TERMS:**

**PLAINTIFF**

Dated: _11/16/2023_   _____
                        LESHANIA BLUE

**PLAINTIFF**

Dated: _____   _____
                        PEDRO PACHECO

**PLAINTIFF**

Dated: _____

_____
TORI BUIE

**PLAINTIFF**

Dated: _____

_____
BOBBY MEGNATH

**PLAINTIFF**

Dated: _____

_____
THERESA JACKSON

**DEFENDANTS**

Dated: _____

_____
]Edmund Scanlan, on behalf of
BRIDGE LEGAL SUPPORT SERVICES
LLC, BRIDGE LEGAL HOLDINGS, LLC,
and BRIDGE LEGAL TECHNOLOGY
LLC

Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**5.12** **When Agreement Becomes Enforceable; Counterparts:** This Agreement shall become binding upon its execution, subject to the provisions hereof. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

**5.13** **Signature of Named Plaintiffs:** This Agreement is valid and binding once signed by Defendant's authorized representative and the Named Plaintiffs. Named Plaintiffs agree to sign this Agreement and by signing this Agreement are bound by the terms herein stated.

**5.14** **Facsimile, Electronic and Email Signatures:** Any party may execute this Agreement by transmitting that signature page via facsimile, electronic signature or email to counsel for the other party. Any signature made and transmitted by facsimile, electronic signature or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile, electronic signature or email

**5.15** **Parties' Authority:** The signatories hereto hereby represent that they are fully authorized to enter into this Agreement and bind the Parties hereto and the Participating Plaintiffs to the terms and conditions thereof.


**WE AGREE TO THESE TERMS:**

**PLAINTIFF**


Dated: _____          _____
                                LESHANIA BLUE


**PLAINTIFF**


Dated: _____          _____
                                PEDRO PACHECO

**PLAINTIFF**

Dated: _____

_____
TORI BUIE

**PLAINTIFF**

Dated: _____

_____
BOBBY MEGNATH

**PLAINTIFF**

Dated: 11/11/2023

_____
THERESA JACKSON

**DEFENDANTS**

Dated: _____

_____
]Edmund Scanlan, on behalf of
BRIDGE LEGAL SUPPORT SERVICES
LLC, BRIDGE LEGAL HOLDINGS, LLC,
and BRIDGE LEGAL TECHNOLOGY
LLC

Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**5.12** **When Agreement Becomes Enforceable; Counterparts:** This Agreement shall become binding upon its execution, subject to the provisions hereof. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

**5.13** **Signature of Named Plaintiffs:** This Agreement is valid and binding once signed by Defendant's authorized representative and the Named Plaintiffs. Named Plaintiffs agree to sign this Agreement and by signing this Agreement are bound by the terms herein stated.

**5.14** **Facsimile, Electronic and Email Signatures:** Any party may execute this Agreement by transmitting that signature page via facsimile, electronic signature or email to counsel for the other party. Any signature made and transmitted by facsimile, electronic signature or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile, electronic signature or email

**5.15** **Parties' Authority:** The signatories hereto hereby represent that they are fully authorized to enter into this Agreement and bind the Parties hereto and the Participating Plaintiffs to the terms and conditions thereof.


**WE AGREE TO THESE TERMS:**

**PLAINTIFF**

Dated: _____

_____
LESHANIA BLUE


**PLAINTIFF**

Dated: _____

_____
PEDRO PACHECO

**PLAINTIFF**

Dated: 11/10/2023

_____

TORI BUIE

**PLAINTIFF**

Dated: _____

_____

BOBBY MEGNATH

**PLAINTIFF**

Dated: _____

_____

THERESA JACKSON

**DEFENDANTS**

Dated: _____

_____

]Edmund Scanlan, on behalf of
BRIDGE LEGAL SUPPORT SERVICES
LLC, BRIDGE LEGAL HOLDINGS, LLC,
and BRIDGE LEGAL TECHNOLOGY
LLC

Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**5.12** **When Agreement Becomes Enforceable; Counterparts:** This Agreement shall become binding upon its execution, subject to the provisions hereof. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

**5.13** **Signature of Named Plaintiffs:** This Agreement is valid and binding once signed by Defendant's authorized representative and the Named Plaintiffs. Named Plaintiffs agree to sign this Agreement and by signing this Agreement are bound by the terms herein stated.

**5.14** **Facsimile, Electronic and Email Signatures:** Any party may execute this Agreement by transmitting that signature page via facsimile, electronic signature or email to counsel for the other party. Any signature made and transmitted by facsimile, electronic signature or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile, electronic signature or email

**5.15** **Parties' Authority:** The signatories hereto hereby represent that they are fully authorized to enter into this Agreement and bind the Parties hereto and the Participating Plaintiffs to the terms and conditions thereof.

**WE AGREE TO THESE TERMS:**

**PLAINTIFF**

Dated: _____

_____
LESHANIA BLUE

**PLAINTIFF**

Dated: _____

_____
PEDRO PACHECO

**PLAINTIFF**

Dated: _____                  _____

                                          TORI BUIE

**PLAINTIFF**

Dated: _____                   _____

                                          BOBBY MEGNATH

**PLAINTIFF**

Dated: _____                   _____

                                          THERESA JACKSON

**DEFENDANTS**

Dated: _____                   _____
       11/8/2023                          ]Edmund Scanlan, on behalf of
                                          BRIDGE LEGAL SUPPORT SERVICES
                                          LLC, BRIDGE LEGAL HOLDINGS, LLC,
                                          and BRIDGE LEGAL TECHNOLOGY
                                          LLC

| Employee Name | Base Rate | Reported OT Hours | Reported OT Damages | Workweeks | OTCW (Assumed) Overtime Workweeks | OT OTCW Damages | Liq. OT OTCW | Class Member Share |
|---|---|---|---|---|---|---|---|---|
| Lafrances Whitsett | $20.00 | 8.5 | $170.00 | 28 | 7 | $105.00 | $105.00 | $380.00 |
| Victoria Farrar | $20.00 | 0 | $0.00 | 6 | 1.5 | $22.50 | $22.50 | $45.00 |
| Kaitlynn Torres | $20.00 | 0 | $0.00 | 1 | 0.25 | $3.75 | $3.75 | $7.50 |
| Nicole Davis | $20.00 | 0 | $0.00 | 2 | 0.5 | $7.50 | $7.50 | $15.00 |
| Danielle Wray | $20.00 | 0 | $0.00 | 1 | 0.25 | $3.75 | $3.75 | $7.50 |
| Taylor Davis | $20.00 | 0 | $0.00 | 2 | 0.5 | $7.50 | $7.50 | $15.00 |
| Nicole Slovacek | $20.00 | 0 | $0.00 | 4 | 1 | $15.00 | $15.00 | $30.00 |
| Terra Mills | $20.00 | 56.6 | $1,132.00 | 25 | 6.25 | $93.75 | $93.75 | $1,319.50 |
| Kevin Spencer | $20.00 | 0 | $0.00 | 4 | 1 | $15.00 | $15.00 | $30.00 |
| Nina Zidrashko | $20.00 | 0 | $0.00 | 12 | 3 | $45.00 | $45.00 | $90.00 |
| Shira Smillie | $20.00 | 0 | $0.00 | 8 | 2 | $30.00 | $30.00 | $60.00 |
| Cliffannie Laviolette | $20.00 | 0 | $0.00 | 6 | 1.5 | $22.50 | $22.50 | $45.00 |
| Francine Ellis | $20.00 | 0 | $0.00 | 10 | 2.5 | $37.50 | $37.50 | $75.00 |
| Theresa Jackson | $20.00 | 0 | $0.00 | 26 | 6.5 | $97.50 | $97.50 | $195.00 |
| Haley Hieatt | $20.00 | 0 | $0.00 | 17 | 4.25 | $63.75 | $63.75 | $127.50 |
| Jennifer Polk | $20.00 | 0 | $0.00 | 17 | 4.25 | $63.75 | $63.75 | $127.50 |
| Katina Hurst | $20.00 | 0 | $0.00 | 4 | 1 | $15.00 | $15.00 | $30.00 |
| Laqarius Sanders | $20.00 | 16 | $320.00 | 11 | 2.75 | $41.25 | $41.25 | $402.50 |
| Lisa Cirillo | $20.00 | 0 | $0.00 | 2 | 0.5 | $7.50 | $7.50 | $15.00 |
| Lizzet Pulido | $20.00 | 0 | $0.00 | 3 | 0.75 | $11.25 | $11.25 | $22.50 |
| Sarah Avwata | $20.00 | 0 | $0.00 | 1 | 0.25 | $3.75 | $3.75 | $7.50 |
| Stephanie Linares | $20.00 | 0 | $0.00 | 1 | 0.25 | $3.75 | $3.75 | $7.50 |
| Victoria Valliant | $20.00 | 0 | $0.00 | 21 | 5.25 | $78.75 | $78.75 | $157.50 |
| Chelsea Castro | $20.00 | 0 | $0.00 | 9 | 2.25 | $33.75 | $33.75 | $67.50 |
| Amanda Doohen | $20.00 | 0 | $0.00 | 3 | 0.75 | $11.25 | $11.25 | $22.50 |
| Angelica Fernandez | $20.00 | 0 | $0.00 | 16 | 4 | $60.00 | $60.00 | $120.00 |
| Diane Lazo | $20.00 | 0 | $0.00 | 22 | 5.5 | $82.50 | $82.50 | $165.00 |
| Dione Holman | $20.00 | 0 | $0.00 | 5 | 1.25 | $18.75 | $18.75 | $37.50 |
| Monesca Smith | $20.00 | 0 | $0.00 | 20 | 5 | $75.00 | $75.00 | $150.00 |
| Kevin Augustin | $20.00 | 0 | $0.00 | 1 | 0.25 | $3.75 | $3.75 | $7.50 |
| Linda Bartch | $20.00 | 11 | $220.00 | 12 | 3 | $45.00 | $45.00 | $310.00 |
| Sarah Butcher | $20.00 | 0 | $0.00 | 19 | 4.75 | $71.25 | $71.25 | $142.50 |
| Patrice Lloyd | $20.00 | 0.4 | $8.00 | 10 | 2.5 | $37.50 | $37.50 | $83.00 |
| Megan Brown | $20.00 | 0 | $0.00 | 22 | 5.5 | $82.50 | $82.50 | $165.00 |
| Daphne George | $20.00 | 0 | $0.00 | 2 | 0.5 | $7.50 | $7.50 | $15.00 |
| LeShania Blue | $20.00 | 189.5 | $3,790.00 | 24 | 6 | $90.00 | $90.00 | $3,970.00 |
| Rebecca Bilokury | $20.00 | 0 | $0.00 | 25 | 6.25 | $93.75 | $93.75 | $187.50 |
| Stephanie Linares | $20.00 | 0 | $0.00 | 2 | 0.5 | $7.50 | $7.50 | $15.00 |
| Oghenekevwe Avwata | $20.00 | 0 | $0.00 | 4 | 1 | $15.00 | $15.00 | $30.00 |
| Pedro Pacheco | $20.00 | 194.4 | $3,888.00 | 23 | 5.75 | $86.25 | $86.25 | $4,060.50 |
| Amber Smithey | $20.00 | 9 | $180.00 | 22 | 5.5 | $82.50 | $82.50 | $345.00 |
| Jazmine Avery | $20.00 | 0 | $0.00 | 12 | 3 | $45.00 | $45.00 | $90.00 |
| Breanna Van | $20.00 | 0 | $0.00 | 2 | 0.5 | $7.50 | $7.50 | $15.00 |
| Kayla Morris | $20.00 | 0 | $0.00 | 20 | 5 | $75.00 | $75.00 | $150.00 |
| Natalie Smith | $20.00 | 0 | $0.00 | 23 | 5.75 | $86.25 | $86.25 | $172.50 |
| Jalen Cook | $20.00 | 0 | $0.00 | 20 | 5 | $75.00 | $75.00 | $150.00 |
| Shameka Miller | $20.00 | 0 | $0.00 | 22 | 5.5 | $82.50 | $82.50 | $165.00 |
| Parris Reese | $20.00 | 0 | $0.00 | 2 | 0.5 | $7.50 | $7.50 | $15.00 |
| Tori Buie | $20.00 | 0 | $0.00 | 18 | 4.5 | $67.50 | $67.50 | $135.00 |
| Bobby Megnath | $20.00 | 11.6 | $232.00 | 20 | 5 | $75.00 | $75.00 | $382.00 |
| Takora Seldon | $20.00 | 0 | $0.00 | 4 | 1 | $15.00 | $15.00 | $30.00 |
| Shelina Hill | $20.00 | 0 | $0.00 | 20 | 5 | $75.00 | $75.00 | $150.00 |
| Julius Williamson | $20.00 | 41 | $820.00 | 18 | 4.5 | $67.50 | $67.50 | $955.00 |
| Bailey Lawrence | $20.00 | 0 | $0.00 | 17 | 4.25 | $63.75 | $63.75 | $127.50 |
| Janae Robinson | $20.00 | 29.7 | $594.00 | 18 | 4.5 | $67.50 | $67.50 | $729.00 |
| Issac Vasquez | $20.00 | 1 | $20.00 | 13 | 3.25 | $48.75 | $48.75 | $117.50 |
| Vanessa Sheperd | $20.00 | 0 | $0.00 | 18 | 4.5 | $67.50 | $67.50 | $135.00 |
| Rebecca Crabtree | $20.00 | 0 | $0.00 | 8 | 2 | $30.00 | $30.00 | $60.00 |
| Jaylah McKinney | $20.00 | 3.4 | $68.00 | 17 | 4.25 | $63.75 | $63.75 | $195.50 |
| Payton Kalker | $20.00 | 10.8 | $216.00 | 17 | 4.25 | $63.75 | $63.75 | $343.50 |
| Clarisa Corral | $20.00 | 0 | $0.00 | 14 | 3.5 | $52.50 | $52.50 | $105.00 |
| Justin Craig | $20.00 | 0 | $0.00 | 1 | 0.25 | $3.75 | $3.75 | $7.50 |
| Lauren Moore | $20.00 | 7.3 | $146.00 | 14 | 3.5 | $52.50 | $52.50 | $251.00 |
| Crystal Cervantes | $20.00 | 0 | $0.00 | 17 | 4.25 | $63.75 | $63.75 | $127.50 |
| TOTALS | | 590.2 | $11,804.00 | 790 | 197.5 | $2,962.50 | $2,962.50 | $17,729.00 |
| | | | | | | (6 min off the clock) | (6 min off the clock) | |